1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  CONSTANCE CRAVER,                      No. CIV S-09-1276-MCE-CMK

12              Plaintiff,

13      vs.                               <u>FINDINGS AND RECOMMENDATIONS</u>

14  NATIONAL CITY BANK, et al.,

15              Defendants.

16  _____/

17          Plaintiff, proceeding pro se, brings this action to "quiet title." This case was

18  originally filed in the Superior Court of California, County of Shasta. On May 8, 2009,

19  Defendants removed the action to this court pursuant to 28 U.S.C. § 1441 *et seq.* Pending before

20  the court is Defendant's motion to dismiss (Doc. 8) and Defendant's motion to strike (Doc. 10),

21  to which Plaintiff failed to file any opposition. Instead, Plaintiff filed a motion to remand this

22  matter back to the Shasta County Superior Court (Doc. 20), to which Defendant filed an

23  opposition (Doc. 25), and Plaintiff filed a reply (Doc. 28).

24  / / /

25  / / /

26  / / /

## I.     Motion to Remand

The court will first address Plaintiff's motion to remand, in order to address whether this court has proper jurisdiction to rule on the other pending motions.

Plaintiff alleges Defendant improperly removed this action from the Superior Court of Shasta County.  She claims this action does not meet the requirements of diversity jurisdiction under 28 U.S.C. § 1441(b) as the amount in controversy does not exceed $75,000 because that she is only requesting $53,293.23 in monetary damages plus whatever accumulates during the pendency of this action, and all parties are citizens of California because Defendant maintained a branch office in Redding, California until 2007.  In addition, she claims this case does not involve a federal question.   Defendant, in response, argues that the amount in controversy does exceed $75,000 as Plaintiff is attempting to rescind a $195,000 mortgage, it is a citizen of Ohio, the location of it's main office, and this court's jurisdiction is based on diversity, not federal question.

28 U.S.C. § 1332(a) provides that

> district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between – (1) citizens of different States . . . .

Here, the undersigned agrees that the amount in controversy exceeds $75,000.  Although Plaintiff argues that she is only asking for monetary damages, she has asked that

> title to the subject property is vested in plaintiff, <u>Constance Craver</u> alone as of <u>02/01/2009</u> and that the defendant, <u>National City Mortgage</u> herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendant, National City Mortgage, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.

(Compl. at 14).  In addition, she is requesting legal title and possession be transferred to her.  No where in her prayer for relief does she ask for monetary damages; instead she is requesting the court declare her to be the rightful holder of title to the property, free and clear of any mortgage

2

1  loan Defendant may claim to hold.   In essence, she is asking for the full value of the loan, which

2  both parties seems to agree is roughly $195,000.  The value of that mortgage loan would bring

3  the amount in controversy within the jurisdiction of this court.  In addition, Defendant has filed a

4  declaration by Richard Klein, Vice President and Senior Attorney for National City Bank, which

5  supports its claim that it is a citizen of Ohio.  Plaintiff fails to refute this evidence.

6  　　　　　　Accordingly, the undersigned finds this court has diversity jurisdiction to hear this

7  matter, and will recommend the motion to remand be denied.

8  　　　　**II.  Motion to Dismiss**

9  　　　　　　Defendant filed a motion to dismiss, or in the alternative for a more definite

10  statement, pursuant to Federal Rules of Civil Procedure 12(b)(6), (e).  Defendant argues

11  Plaintiff's claims are unavailable, she fails to allege facts sufficient to state a claim, and are

12  vague and ambiguous.

13  　　　　**A.  Plaintiff's Allegations**

14  　　　　　　Plaintiff's complaint does not clearly set out her claims.  To the best of the court's

15  ability, her allegations are summarized below.  Plaintiff titled this action as a complaint for quiet

16  title, and has listed her "causes of action" to be offset, rescission, fraud and misrepresentation,

17  actual damages, and declaratory relief.

18  　　　　　　In her complaint, Plaintiff, who contends she is a real estate salesperson,  alleges

19  she "mistakenly believed that combining my two mortgages onto [sic] one, lower interest rate

20  mortgage would help me to pay off my home faster."  (Compl. at 4). Plaintiff states that she first

21  approached her bank in order to refinance her mortgage, but after she was rejected, she was

22  referred to a mortgage broker.  She claims that on or about February 14, 2007, she and Defendant

23  entered into a written contract wherein she agreed to refinance her property in the amount of

24  $195,000 at an interest rate of 6.375% APR.  Pursuant to that written contract, Defendant paid

25  off Plaintiff's first mortgage and her equity line of credit, for a combined total of $186,314.15.

26  Included in this new loan were "payoffs in excess amounts to a second mortgage broker that I

3

1  was unaware of at the time." (Compl. at 3).  There were also closing costs and payoff fees in the

2  amount of $8,685.85, which were included in the principle of the new loan.  She discovered, two

3  years later (while studying the requirements for the California broker's exam), that it would take

4  her approximately three years and four months, at a cost of over $50,000 in payments (principle

5  and interest), to bring her principal balance back down to the original amount ($186,314.15).

6         She argues that after two years of dedicated payments, having paid Defendant a

7  total of $36,210.48, her loan balance is still at $190,318.92.  The total she paid in that two year

8  period included $22,843.55 in interest, $4,681.08 in principal, and $8,685.85 in closing costs and

9  fees.  Based on these figures, she has determined that "this loan had no Verifiable Benefit for me,

10  unbeknownst to me at the time because, at that time, I did not know what was done to me or who

11  I was dealing with." (Compl. at 4).

12         She claims that she has made payments for two years, under the terms of the

13  contract, until February 1, 2009, when she "deliberately redirected my family's income towards

14  paying off a line of credit" which was then in excess of $11,000.  (Compl. at 3).  Plaintiff claims

15  she discovered the basis for this action on or about October 31, 2008.  Upon discovery of her

16  alleged injustice, she claims she contacted Defendant in order to rectify the situation.

17         Plaintiff further alleges that upon reviewing her loan documents, she discovered

18  "TILA violations" (presumably referring to the federal Truth in Lending Act, 15 U.S.C. § 1601 *et*

19  *seq*. ("TILA")) and sent a Notice of Rescission and a Qualified Written Request on January 26,

20  2009.  She does not specify what violations she discovered.  Instead she make the conclusory

21  statement that "[w]ithin those documents, I found many violations and one gross miscalculation

22  about our income." (Compl. at 5).  She also sent what appears to be a settlement demand to

23  Defendant, for the amount of $47,210.48 (which apparently includes what she believes are her

24  damages from the increased mortgage amount).

25  / / /

26  / / /

4

1      She then alleges that the new loan was based on inaccurate income amounts, and

2   that her "debt-to-income ration was extremely high for this loan." (Compl. at 6).  While she

3   claims she provided pay stubs and W2's, the loan application incorrectly stated an income of

4   $4,200 per month, when her actual income was only $2,500 per month, which was supported by

5   the pay stubs and W2's she provided to the bank and mortgage broker.  She claims that she did

6   not sign most of the paper work until after the close of escrow.  Specifically, she claims that

7   "[o]nly a briefly typed loan application was signed 6 days after closing and it was the only

8   signature that we put to paper, concerning this number." (Compl. at 6).  She further alleges that

9   Defendant "either knowingly or incompetently received false information that they neglected to

10  verify." (Compl. at 12).

11          **B.      Standards**

12          In considering a motion to dismiss, the court must accept all allegations of

13  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

14  court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

15  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425

16  U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

17  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

18  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

19  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

20  (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

21  lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

22          Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

23  the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

24  and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)

25  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

26  failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

5

1  recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

2  raise a right to relief above the speculative level." Id. at 555-56.  The complaint must contain

3  "enough facts to state a claim to relief that is plausible on its face." Id.  at 570.  "A claim has

4  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

5  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

6  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

7  than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp., 550

8  U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's

9  liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."

10  Id. (quoting Bell Atl. Corp., 550 U.S. at 557).

11        To determine whether a complaint states a claim upon which relief can be granted,

12  the court generally may not consider materials outside the complaint and pleadings.  See Cooper

13  v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.

14  1994).  The court may, however, consider: (1) documents whose contents are alleged in or

15  attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454;

16  (2) documents whose authenticity is not in question, and upon which the complaint necessarily

17  relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,

18  688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,

19  see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

20        Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

21  amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

22  curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

23  / / /

24  / / /

25  / / /

26  / / /

1   **C.    Discussion**

2         Plaintiff's complaint attempts to set forth several "causes of action."  As

3   Defendant contends, several of Plaintiff's "causes of action" are actually requests for remedies,

4   and others are more properly used as defenses not as affirmative claims.[1]  Reading the complaint

5   as broadly as possible, and in the light most favorable to the Plaintiff, it appears Plaintiff is

6   attempting to set forth claims for fraud and violation of TILA.

7         1.  Fraud

8         The elements of a California fraud claim are: (1) misrepresentation (false

9   representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3)

10  intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  Lazar

11  v. Superior Court, 49 Cal. Rptr. 2d 377, 380-81 (Cal. 1996).  In addition, Federal Rule of Civil

12  Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with

13  particularity." This heightened pleading standard "requires a pleader of fraud to detail with

14  particularity the time, place, and manner of each act of fraud, plus the role of each defendant in

15  each scheme." Lancaster Cmty. Hosp. v. Antelope Valley Dist., 940 F.2d 397, 405 (9th Cir.

16  1991). Thus, "allegations of fraud must be specific enough to give defendants notice of the

17  particular misconduct which is alleged to constitute the fraud charged so that they can defend

18  against the charge and not just deny that they have done anything wrong." Bly-Magee v.

19  California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

20        Rule 9(b)'s heightened pleading standard "is not an invitation to disregard Rule

21  8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance

22  of unnecessary discovery." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). "A pleading

23  is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the

24  _____

25      [1]     Such "causes of action" include offset, rescission, actual damages and declaratory
        relief.  Rescission, damages and declaratory relief are the remedies she is requesting, and offset is
        more properly used as a defense or counterclaim.  See Steinmeyer v. Warner Cons. Corp., 116
26  Cal. Rptr. 57, 59-60 (Cal. App. 1974), Cal. Civ. Proc. Code § 431.70.

1  defendant can prepare an adequate answer from the allegations." <u>Neubronner v. Milken</u>, 6 F.3d

2  666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing <u>Gottreich v. San Francisco Inv.</u>

3  <u>Corp.</u>, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . . In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

13  <u>In Re Glenfed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in

14  original) *superseded by statute on other grounds as stated in* <u>Marksman Partners, L.P. v. Chantal</u>

15  <u>Pharm. Corp.</u>, 927 F. Supp. 1297 (C.D. Cal. 1996); <u>see</u> <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th

16  Cir. 1997) ("fraud allegations must be accompanied by "the who, what, when, where, and how"

17  of the misconduct charged).

18       Here, Defendant argues Plaintiff's complaint is insufficient to state a claim for

19  fraud.  Specifically, Defendant argues that while Plaintiff alleges her debt-to-income ratio in the

20  loan documents was inaccurate, and misrepresented Plaintiff's actual income, she fails to make

21  any allegations that Defendant prepared or had any control over those false and inaccurate

22  documents.  In addition, Defendant points out that while Plaintiff alleges the documents

23  contained false and inaccurate information, and she was told by some unidentified person and/or

24  entity that the documents were just a formality, she admits that she signed the documents which

25  were submitted to Defendant.

26  / / /

1    The undersigned agrees.  Plaintiff fails to allege any actual wrong doing by

2 Defendant.  To the extent Plaintiff claims Defendant relied on false information contained in the

3 loan documents, she fails to allege Defendant was somehow responsible for including that false

4 information in the documents.  She does allege that Defendant knew, or should have known, that

5 the amount of income included in the loan documents was inflated because she also included pay

6 stubs and W2s, she fails to explain how knowledge of an inconsistency between the loan

7 documents and the pay stubs/W2s constitutes fraud.  To the extent she claims she did not receive

8 the loan she had requested, she fails to explain how the loan she did receive was not what she

9 requested.  She implies that there were additional fees included in the loan which she was not

10 made aware of, but she fails to specify how Defendant fraudulently included these additional

11 fees.

12    Based on the facts alleged in her complaint, it appears to the undersigned that

13 Plaintiff voluntarily sought to refinance her mortgages in one mortgage with a lower, fixed

14 interest rate.  She approached her bank, but was not able to secure a new mortgage based on her

15 self-employed status.  Thus, she was referred to an unknown (and unnamed) mortgage broker,

16 who successfully assisted her in completing her goal of refinancing her mortgage into a lower

17 interest mortgage (presumably with a lower monthly payment than she had with her previous first

18 and second).  However, she was not aware of how much the refinancing would cost her in the

19 short term.  While the court is sympathetic to Plaintiff's financial difficulties, it appears that she

20 received what she bargained for, a lower interest consolidated loan.  It is hard for the court to

21 understand how a licensed real estate agent was unable to understand that refinancing a mortgage

22 would not involve significant costs which would not be recouped in the short term.

23    While the undersigned believes it will be difficult, based on what is before the

24 court presently, for Plaintiff to amend her complaint to state a claim, leave to amend is to be

25 freely given.  Therefore, the court should allow Plaintiff an opportunity to amend her complaint

26 to see if she can allege sufficient facts to state claim.

2.  Truth in Lending Act Violations

Plaintiff also appears to claim that Defendant somehow violated the TILA.  These allegations are unclear.  Plaintiff simply makes conclusory statements that while reviewing her documents, she discovered "many violations." (Compl. at 5).  As discussed above, conclusory allegations are insufficient to state a claim.  Plaintiff fails to provide any facts as to what the violations were, or who violated TILA.  She therefore fails to state a claim for violation of TILA.

A lender's violation of TILA allows the borrower to seek damages or to rescind a consumer loan secured by the borrower's primary dwelling.  There is a one-year statute of limitations applicable to TILA damages claims.  See 15 U.S.C. § 1640(e).  It appears to the undersigned that the limitations period in this case accrued at the time Plaintiff signed the loan documents, in February 2007.  See Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir.2003).  Accordingly, it would appear that Plaintiff's claims for damages under TILA, barring some unforseen grounds for equitable tolling, are now time-barred.  See King v. California, 784 F.2d 910, 915 (1986).   However, Plaintiff has also requested rescission.

As to plaintiff's claim for rescission based violations of TILA, "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. § 1635(f).  Therefore, assuming Plaintiff is able to state a claim for violation of TILA, it does not appear at this time that her claims for rescission would be barred by the statute of limitations.

As such, Plaintiff claims for violation of TILA should be dismissed.  However, it does not appear impossible for Plaintiff to amend her complaint to allege sufficient facts to state a claim.

/ / /

/ / /

/ / /

/ / /

### III.   Motion to Strike

Defendant also requests this court strike several paragraphs of Plaintiff's complaint, in the event the court were to deny Defendant's motion to dismiss.  As the undersigned is recommending granting the motion to dismiss, the motion to strike is moot.  If the undersigned's recommendation is not adopted, the court will address the motion to strike.

### VI.   Conclusion

Plaintiff's complaint fails to allege with any specificity how Defendant's actions constituted fraud and how the TILA was violated.  As such, Defendant's motion to dismiss should be granted.  However, it does not appear impossible for Plaintiff to amend her complaint to allege sufficient facts to state a claim.  Plaintiff should, therefore, be given an opportunity to file an amended complaint.

Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 15-220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

Based on the foregoing, the undersigned recommends that

1.    Plaintiff's motion to remand (Doc. 20) be denied;

2.    Defendant's motion to dismiss Plaintiff's complaint (Doc. 8) be granted with leave to amend;

3.    Plaintiff be allowed, but not required to, file an amended complaint;

4.    If no amended complaint is filed within the time provided, this case be dismissed without leave to amend; and

/ / /

11

1          5.      Defendant's motion to strike (Doc. 10) be denied as moot.

2          These findings and recommendations are submitted to the United States District

3   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

4   after being served with these findings and recommendations, any party may file written

5   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

6   Findings and Recommendations."  Failure to file objections within the specified time may waive

7   the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8

9

10  DATED:  October 22, 2009

11                                              _____
                                                CRAIG M. KELLISON
12                                              UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26